**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHAKOYA Q. HAYGOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:25-cv-257-BL-CWB** |
| | ) | |
| **CITY OF MONTGOMERY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. Introduction

Shakoya Q. Haygood, acting *pro se*, brought this action on April 3, 2025 to assert claims arising out of her former employment with the Sanitation Department for the City of Montgomery. (*See* Doc. 1). Haygood thereafter filed an amended complaint to name "City of Montgomery" in the place of "Montgomery Sanitation Department" as the proper defendant. (*See* Doc. 20). Haygood claims that she experienced two occasions of on-the-job sexual harassment committed by two different co-workers. (*See id.*). The City in turn has requested entry of summary judgment. (*See* Docs. 48 & 49). Upon careful review and consideration of the record, the Magistrate Judge will recommend that the motion for summary judgment be granted.

## II. Jurisdiction

Because Haygood is seeking relief pursuant to Title VII of the Civil Rights Act of 1964, subject matter jurisdiction is conferred by 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the … laws … of the United States."). The City has not contested personal jurisdiction or venue, and the record is adequate to support both. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

**III. Legal Standard**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party… . [A fact] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citation omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That responsibility may be satisfied by identifying portions of the record that negate an essential element of the plaintiff's claim. *Id*. Alternatively, a movant who does not have a trial burden of production may show that the nonmoving party "cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1)(B); *see also* advisory committee's note ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."); *Celotex*, 477 U.S. at 322-23. Under either scenario, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists as to each element of the underlying claims. *See id*. at 324; *see also* Fed. R. Civ. P. 56(c)(1).

To establish a genuine dispute of material fact, the nonmoving party must produce such evidence as would be sufficient for a reasonable trier of fact to return a verdict in its favor. *See Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) ("Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing

by producing affidavits or other relevant and admissible evidence beyond the pleadings."). When evaluating whether a genuine dispute of material fact exists, the court must view all evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). So too is it well settled that "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024) (citation omitted); *see also Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) ("[A]n inference based on speculation and conjecture is not reasonable.") (citation omitted).

## IV. Factual Background[1]

Haygood was hired by the City of Montgomery on February 16, 2024 to serve as a Sanitation Truck Driver within its Sanitation Department. (*See* Doc. 49-1). On Friday, April 12, 2024, one of Haygood's co-workers—Fernandez Dunn—allegedly asked Haygood, "How do you get your legs so thick and juicy like that?" (*See* Doc. 49-4). The following Monday, April 15, 2024, Haygood submitted a report to the Sanitation Department Director, Steven Hendrieth, detailing the incident and calling for Dunn to be terminated. (*See id*. & Doc. 49-3 at p. 1, ¶¶ 3-4). In response, Hendrieth "immediately removed Dunn from Haygood's truck" and "immediately made a recommendation for disciplinary action against Dunn." (*See*

[1] The facts as stated herein are taken from the evidentiary exhibits attached to the parties' summary judgment filings, reflect the facts deemed material to a proper resolution of the summary judgment issues, and are construed most favorably to Haygood as the non-movant.

Doc. 49-3 at p. 1, ¶¶ 5-6). And on Tuesday, April 16, 2024, Hendrieth recommended that Dunn be terminated. (*See id.* at ¶ 7). Hendrieth held a departmental meeting on May 3, 2024 wherein Dunn admitted to making the underlying statements. (*See* Doc. 49-3 at p. 1, ¶ 8 & Doc. 49-6). Dunn resigned on or about June 24, 2024 before his termination was effectuated. (*See* Doc. 49-3 at p. 1, ¶ 9 & Doc. 49-7).

On October 11, 2024, Haygood submitted another report to Hendrieth—this time alleging sexual harassment by co-worker JaQuan Hubbard. (*See* Doc. 49-3 at p. 1, ¶ 10 & Doc. 49-8). In her new report, Haygood stated that she had been engaged in a conversation with Hubbard about his birthday when Hubbard "proceeded to rub [her] leg and grope [her] butt and back." (*See* Doc. 49-8). Hendrieth took statements from both Haygood and Hubbard, but Hubbard claimed that "nothing happened." (*See* Doc. 49-9). On October 15, 2024, Hendrieth requested that the City's Inspector General launch a formal investigation. (*See* Doc. 49-3 at p. 1, ¶ 11 & Doc. 49-9).

During her October 17, 2024 interview in the Inspector General's investigation, Haygood generally maintained the same facts as set out in her original report. (*See* Doc. 49-10 at pp. 3-4). A potential eyewitness—Leron Bradford—stated during his interview that he had only observed Haygood and Hubbard having a conversation. (*See id.* at p. 5). And according to Hubbard in his October 25, 2024 interview, Haygood had approached him, initiated a conversation about his birthday, and asked "if he was going to the club." (*See id.*). Hubbard claimed to have responded in the negative and walked away. (*See id.*). Hubbard stated that the entire encounter lasted "less than five minutes" and denied ever touching Haygood in any way. (*See id.* at p. 6).

The Inspector General's report noted that there were no witnesses or physical evidence of sexual harassment and thus deemed Haygood's allegation to be unsubstantiated. (*See id.* at

p. 7). The report was approved by the Inspector General on October 29, 2024. (*See id.* at p. 1). However, before the report was reviewed and approved by the Legal Department, Haygood resigned—submitting her two-weeks' notice on November 4, 2024 and formally separating on November 15, 2024. (*See* Doc. 49-11 & Doc. 49-10 at p. 1).

Haygood subsquently filed a charge of discrimination with the EEOC and was issued a Determination and Notice of Rights letter dated February 7, 2025. (*See* Doc. 1-1 at pp. 1, 3). Haygood filed her Complaint in this action on April 3, 2025. (*See* Doc. 1).

## V. Discussion

"In a Title VII case summary judgment is appropriate if a plaintiff fails to prove an element of her prima facie case." *Nichols v. CSG Sys., Inc.*, 245 F. App'x 937, 940 (11th Cir. 2007) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003)); *see also Fuller v. SL Alabama, LLC*, 56 F. Supp. 3d 1232 (M.D. Ala. 2014) (finding that summary judgment is appropriate if the plaintiff in a Title VII discrimination action fails to satisfy any one of the elements of a prima facie case). Here, Haygood asserts that she was the victim of co-worker sexual harassment on two occasions. (*See* Doc. 20). "To prevail in a suit against her employer for a fellow employee's sexual harassment that resulted in a hostile work environment, a plaintiff must prove five elements: (1) [t]he employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of was 'sufficiently severe or pervasive to alter the terms and conditions of employment'; and (5) a basis for holding the employer liable." *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1286-87 (11th Cir. 2018) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc)). According to the City, Haygood cannot present sufficient evidence to create a genuine dispute of fact on the fifth element. (Doc. 49 at p. 5).

"With respect to the fifth element, [an] employer can be responsible for the harassing conduct under a theory of either vicarious liability or direct liability." *Wilcox*, 892 F.3d at 1287. (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012)). Vicarious liability may be imposed when the alleged harassment was committed by "a supervisor with immediate (or successively higher) authority over the employee." *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002); *see also Terrell v. Paulding Cnty.*, 539 F. App'x 929, 932 (11th Cir. 2013). Because neither of Haygood's offenders has been alleged or shown to be a supervisor, the vicarious liability doctrine has no application.

Under a theory of direct liability, a plaintiff must show that the employer "knew or should have known of the harassing conduct but failed to take prompt remedial action." *Wilcox*, 892 F.3d 1287 (citing *Miller*, 277 F.3d at 1278); *see also Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003) ("When, as in this case, the alleged harassment is committed by co-workers or customers, a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action.") (citing *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000)). Conversely, however, "if an employer demonstrates an immediate and effective response to a complaint of sexual harassment, liability will be avoided." *Nichols v. Wal-Mart Stores, Inc.*, No. 95-1252-CIV-T-23E, 1997 WL 33147702, at *3 (M.D. Fla. Mar. 26, 1997) (citing *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989)). But such remedial action "must be 'reasonably likely to prevent the misconduct from recurring.'" *Wilcox*, 892 F.3d at 1288 (quoting *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996) (quoting in turn *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990)).

**A. Alleged sexual harassment involving Dunn**

There is no dispute that Haygood reported Dunn's alleged April 12, 2024 (a Friday) conduct to the City on April 15, 2024 (the following Monday). (*See* Doc. 49-3 at p. 1, ¶¶ 3-4 & Doc. 49-4). No allegation or evidence has been put forth to suggest that Dunn previously had engaged in any type of sexual harassment—either toward Haygood or toward another co-worker. So the record does not support any inference that the City knew or should have known that Dunn posed a threat of sexual harassment as of April 12, 2024.

Once the City became aware of Dunn's alleged conduct through Haygood's April 15, 2024 report, its internal mechanisms sprung into action. The record reflects that the Department Director "immediately" removed Dunn from Haygood's assigned vehicle and ensured that the two would no longer work together. (*See* Doc. 49-3 at p. 1, ¶ 5). Moreover, the record further reflects that the Department Director "immediately" recommended Dunn's termination. (*Id.* at ¶¶ 6-7 & Doc. 49-5). A formal departmental meeting next was held on May 3, 2024 wherein Dunn was allowed to speak to the allegations and admitted to making the offending statements. (*See* Doc. 49-3 at p. 1, ¶ 8 & Doc. 49-6). Dunn then voluntarily resigned before the recommended termination was carried out. (*See* Doc. 49-3 at p. 1, ¶ 9 & Doc. 49-7). Haygood does not dispute the core timeline, nor does she allege that she was subjected to any further misconduct by Dunn following her April 12, 2024 report. (*See* Doc. 51).

Given the undisputed facts, no reasonable jury could conclude that the remedial actions taken by the City were not effective. *See Wilcox*, 892 F.3d at 1288 ("Here, the company's action was effective, and a reasonable jury would not have a legally sufficient evidentiary basis to find otherwise. Jackson never again touched Wilcox after her July 10 complaint, notwithstanding her fear that he would do so.") (emphasis added). The undisputed facts likewise would not permit a

reasonable jury to conclude that the remedial action taken by the City was not prompt—as Dunn was not allowed to work again with Haygood after the April 15, 2024 complaint and was facing a recommended termination by the next day. *See id*. ("Here, the company ordered Jackson not to be around Wilcox immediately after her first complaint, and it fired Jackson two weeks after the investigator interviewed Wilcox and learned of her other complaints against him. Wilcox argues that six weeks between her first complaint and the investigator's interview was too long, but we disagree. … Considering this entire succession of activity that culminated in Jackson's termination, we conclude that the evidence could not allow the jury to find that the company failed to act promptly.").

Because no genuine dispute of fact has been shown challenging that the City took prompt and effective remedial action in response to Haygood's April 12, 2024 report, summary judgment is due to be entered against Haygood to the extent she is asserting a Title VII claim in that regard. *See, e.g., Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 650 (11th Cir. 2017) ("The record certainly establishes that once Jones gave Allstate actual notice of the sexual harassment on April 23, 2012, Allstate took immediate corrective action, which precludes liability on her co-worker sexual harassment claim."); *see also Watson*, 324 F.3d at 1257 ("In order to establish a basis for holding [the employer] liable for a hostile work environment, [the employee] must show that [the employer] had notice of the alleged harassment and failed to take immediate and appropriate corrective action.") (citations omitted).

**B. Alleged sexual harassment involving Hubbard**

Haygood's allegations against Hubbard also appear to involve a "one-off" incident of misconduct without any prior sexual harassment directed against Haygood or other co-workers. As with her allegations against Dunn, Haygood does not dispute the timeline of events: that the

harassment was reported on October 11, 2024 (*see* Doc. 49-3 at p. 1, ¶ 10 & Doc. 49-8); that Hendrieth promptly obtained conflicting statements from the involved parties (*see* Doc. 49-9); that a request was made on October 15, 2024 for a formal investigation by the Inspector General (*see* Doc. 49-3 at p. 1, ¶ 11 & Doc. 49-9); that the Inspector General's office conducted additional interviews with Haygood, Hubbard, and a potential witness between October 17 and 25, 2024 (*see* Doc. 49-10 at pp. 3-6); that the Inspector General's investigation determined Haygood's complaint to be unsubstantiated (*see id*. at p. 7); and that Haygood resigned on November 4, 2024 and left employment on November 15, 2024 prior to final approval of the investigation's findings (s*ee* Doc. 49-11 & Doc. 49-10). And as with the Dunn allegations, Haygood does not assert or provide evidence that she was subjected further to working with Hubbard or that she suffered any additional instances of sexual harassment during the investigation period. So as with the Dunn allegations, a reasonable jury could not conclude that the City's actions were anything other than prompt and effective. *See Wilcox*, 892 F.3d at 1288; *Watson*, 324 F.3d at 1257; *see also Jacobs v. Electronic Data Sys. Corp*., 240 F.R.D. 595, 602 (M.D. Ala. 2007) (evaluating the fifth element by whether the "overall response … was adequate in light of [the] complaint").

## VI. Conclusion

"To establish a prima facie case of hostile work environment sexual harassment, the plaintiff must demonstrate a basis for holding the employer liable for the harassment." *Breda*, 222 F.3d at 889 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)). Because Haygood has not presented sufficient evidence to create a genuine issue of fact on that element, <u>and even assuming the underlying incidents occurred precisely as Haygood alleged</u>, the Magistrate Judge hereby **RECOMMENDS** that the motion for summary judgment filed by the City of Montgomery (*see* Doc. 48) be **GRANTED** such that this case is resolved in its entirety.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **August 21, 2026**. An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection. An objecting party also must identify all claims/defenses that the Recommendation failed to address. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 7th day of August 2026.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**